**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALLAN HARGARTEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 6006 |
| | ) | |
| MICHAEL F. SHEAHAN, Cook County Sheriff, et al., | ) ) | Judge Rebecca R. Pallmeyer |
| Defendants | ) | |

**MEMORANDUM OPINION AND ORDER**

After being stopped by a Chicago police officer for traffic offenses on November 6, 2003, Plaintiff Allan Hargarten spent eight days in the custody of the Cook County Department of Corrections ("CCDOC") on an outstanding DuPage County warrant that the police officer discovered during the course of the traffic stop. Plaintiff alleges he would have been able to post bond immediately after his arrest, were it not for the willful refusal of Chicago Police and Cook County Jail officers to verify the amount of the bond set for his release. The court dismissed Plaintiff's first two complaints with leave to amend. (*See* 3/30/06 Order; 12/21/05 Order.) In his Second Amended Complaint, Plaintiff names as Defendants Michael Sheahan, Sheriff of Cook County, and Scott Kurtovich, Executive Director of the CCDOC in their official capacities,[1] and other unknown deputies, employees, and agents of the Cook County Sheriff's Department. Plaintiff joins the County of Cook as an indemnitor to the Cook County Defendants on all claims. In addition, Plaintiff has sued the Chicago Police Department and the City of Chicago, as well as three Chicago

---

[1] Although, as Defendants recognize, certain portions of Plaintiff's Second Amended Complaint create uncertainty as to whether Plaintiff is suing Sheahan and Kurtovich in their individual capacities, (*see, e.g.,* 2d Am. Compl. §§ 7, 15, prayers for relief; Defs' Mot. at 3-4), Plaintiff states unequivocally in his memorandum of law that "the Second Amended Complaint is not intended to allege [a] cause of action against either Defendant Sheahan or Kurtovich individually." (Pl. Opp'n at 3.) Plaintiff characterizes references to claims against Sheahan and Kurtovich in their individual capacities as "typographical errors." (*Id.* at 3-4.) The court accordingly declines to address any arguments related to a purported individual capacity claim.

police officers—Jim Gianella, Robert Spiegel, and Kenneth Josephs–-and other unknown police officers and agents of the Chicago Police Department in their official and individual capacities.

Plaintiff alleges, under 42 U.S.C. §§ 1983 and 1985(2), that all of the individual Defendants violated his rights by intentionally misrepresenting the amount of Plaintiff's bond under the DuPage County warrant and refusing to allow Plaintiff to post bond (Count I), and by failing promptly to notify DuPage County that Plaintiff was in custody pursuant to the DuPage County warrant (Count II). Plaintiff further sues all Defendants for illegal imprisonment under Illinois state law (Count III), and brings an additional claim under 42 U.S.C. §§ 1983 and 1985(2) against "municipalities and their Departments," alleging a municipal policy and custom of ignoring requests to confirm bond amounts and failing to investigate and confirm bond amounts and the validity of warrants (Count IV).

Defendants Sheahan, Kurtovich, and Cook County now move to dismiss Counts I, II, and IV for failure to sufficiently allege a § 1983 claim against Defendants in their official capacities. Defendants also move to dismiss Count III for illegal imprisonment as untimely under the Local Governmental and Governmental Employees Tort Immunity Act (the "Tort Immunity Act").[2] For the reasons stated below, the motion to dismiss is granted in part and denied in part. The court also dismisses, *sua sponte*, all of Plaintiff's § 1985(2) claims without prejudice.

**FACTUAL BACKGROUND**

On January 2, 1996, a police officer arrested Plaintiff in DuPage County for driving on a suspended license and "improper use of registration." (2d Am. Compl. ¶ 37.) Plaintiff pleaded guilty to both charges in DuPage County Court. The court sentenced him to court supervision and assessed fines of $230. (*Id.* ¶ 38.) Plaintiff did not pay these fines, nor did he report to court for a scheduled status hearing. (*Id.* ¶ 39.) As a result, the DuPage County Court issued a warrant for

---

[2] The City Defendants did not join this motion.

Plaintiff's arrest with an applicable bail of $3000/10%. (*Id.*) In other words, if Plaintiff were arrested under this warrant, he would be required to post $300 cash to secure his freedom. (*Id.*)[3]

More than seven years later, on November 6, 2003, Defendant Chicago Police Officer Jim Giannella pulled Plaintiff over in Cook County for failure to stop at a stop sign. (*Id.* ¶ 43.) Plaintiff was charged with failure to stop, driving without proof of insurance, and driving on a suspended license. (*Id.* ¶ 43.) Gianella arrested Plaintiff on the outstanding DuPage County warrant, informing Plaintiff that he would have to post $3,000 in cash pursuant to that warrant in order to secure his release. (*Id.* ¶¶ 44-45, 47.)[4] In fact, the warrant called for release on payment of cash in the amount of just $300 (10% of the $3,000 bond); no outstanding warrant would have required Plaintiff to pay $3,000 bond for his release. (*Id.* ¶ 66.)

Plaintiff advised Giannella that the $3,000 bond amount was incorrect and asked him to confirm the amount, but Giannella refused to do so. (*Id.* ¶ 46.) Plaintiff was subsequently booked by Defendant Chicago Police Officer Kenneth Josephs and searched by Defendant Officer Robert Spiegel. (*Id.* ¶¶ 47-48.) Plaintiff told both Josephs and Spiegel that the bond amount of the DuPage County warrant was incorrect and requested that they confirm the amount, but Josephs and Spiegel refused to do so. (*Id.*)

On November 7, 2003, Plaintiff pleaded guilty to the November 6, 2003 traffic violations before Judge Kevin Sheehan of the Cook County Criminal Court, who sentenced him to "time served." (*Id.* ¶¶ 49, 54.) While in court on November 7, 2003, Plaintiff advised the court and the courtroom deputy that the amount of the bond was incorrect, but the deputy took no action to

---

[3] Under Illinois law, a 10% bond is standard practice. *See* 725 ILCS 5/110-7. ("The person for whom bail has been set shall execute the bail bond and deposit . . . a sum of money equal to 10% of the bail."); *see also* ILL. SUP. CT. R. 530 (confirming that 725 ILCS 5/110-7 applies in "every case in which the amount of bail under these rules is $750 or more").

[4] The complaint does not specify exactly how or when Giannella learned of the DuPage County warrant, or whether he would have arrested Plaintiff on the November 6, 2003, traffic violations if the DuPage County warrant had not been outstanding.

investigate the matter. (*Id.* ¶¶ 51-52.) Judge Sheehan remanded Plaintiff to the custody of Defendant Sheahan, the Cook County Sheriff, pursuant to the DuPage County warrant. (*Id.* ¶ 54.) Plaintiff remained in CCDOC custody until he was transported to the DuPage County Jail on November 12, 2003. (*Id.* ¶ 56.) Throughout his time in custody, Plaintiff advised employees at the CCDOC that the amount of the bond was incorrect and requested that they confirm the amount, but the employees refused or ignored Plaintiff's requests. (*Id.* ¶¶ 55, 57-58.) Plaintiff had the means to post $300 to secure his freedom at any time during his custody. (*Id.* ¶ 61.) No one notified DuPage County that Plaintiff was in the custody of the CCDOC on the DuPage County warrant until November 12, 2003. (*Id.* ¶¶ 64-65.) Although the Complaint is not explicit, the court infers that Plaintiff was released on or about that date.

**DISCUSSION**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to give the defendant "fair notice of what the suit is about and the grounds on which it rests." *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). When considering a motion to dismiss, this court accepts all well-pleaded allegations as true and draws all reasonable inferences in Plaintiff's favor. *McMillan v. Collection Prof'ls Inc.*, 455 F. 3d 754, 758 (7th Cir. 2006) (citation omitted). Dismissal is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003) (internal quotations and citation omitted).

**A.     42 U.S.C. § 1983 Claims**

Defendants argue that Counts I, II, and IV must be dismissed because "Plaintiff fails to allege cognizable individual capacity or official capacity claims under 42 U.S.C. §1983 against defendants Sheahan and Kurtovich." (Defs.' Mot. at 1.) As the court has explained, Plaintiff has

4

confirmed that he does not bring this suit against Sheahan and Kurtovich in their individual capacities. (*See supra* n. 1.) For the reasons explained here, the court concludes that Plaintiff's § 1983 claims against Sheahan and Kurtovich in their official capacities survive this motion.

Where, as here, an officer is sued in his official capacity, the suit is treated as one against the government entity for which the officer works. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citations omitted). As a result, Plaintiff's action is treated as one against Cook County for the purpose of Defendants' motion to dismiss. To prevail on his official capacity claim under § 1983 against agents of Cook County, Plaintiff must show that his constitutional injury resulted from the execution of the County's policies or customs. *Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). An official policy or custom sufficient to establish liability for a government entity under § 1983 can exist in three forms:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006) (quoting *Roach v. City of Evansville,* 111 F.3d 544, 548 (7th Cir.1997)). Plaintiff is not required to meet a heightened pleading standard for a § 1983 official-capacity claim. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006). Thus, Plaintiff need not plead particular facts upon which he bases his claim of an official policy or custom, and a "short and plain statement" that a government entity's official policy or custom caused his injury is sufficient to survive a motion to dismiss. *Id.*; *see* FED. R. CIV. P. 8(a)(2).[5]

---

[5] Citing *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000), Defendants concede that the law does not require Plaintiff to meet a heightened standard of pleading to state an official-capacity claim, (Defs.' Mot. at 6), but emphasize *McCormick*'s statement that *Monell* requires conclusory allegations to be "buttressed by facts alleging wrongdoing" by the relevant
(continued...)

5

### 1. Counts I and II

Plaintiff's complaint sufficiently alleges official capacity liability under § 1983 as to Counts I and II. He identifies numerous instances in which various employees and agents of the Defendants refused to investigate and confirm the correct bond amount despite Plaintiff's requests. (*See, e.g.*, 2d Am. Compl. ¶¶ 55, 57.) Plaintiff further alleges that these refusals were the result of Defendants' "policy, custom and/or regulation to ignore and/or refuse any requests by an arrestee to confirm the accuracy of a bond on a warrant when said bond is alleged to be incorrect" and that these policies and customs denied Plaintiff his constitutional rights. (*See id.* ¶ 100; *see also id.* ¶¶ 95, 107-09.) Defendants nevertheless argue that Plaintiff's allegations that Sheahan and CCDOC had "no policy" to take certain actions to investigate and confirm the bond amount defeat his official liability claim. In their view, Plaintiff is "without a clue" as to what policy he believes violated his rights. (Defs.' Mot. at 7-8.) The court disagrees. Plaintiff has been sufficiently specific in asserting that Defendants have a policy and custom of ignoring requests to confirm or refusing to confirm or investigate a disputed bond amount. (2d. Am. Compl. ¶ 100; *see also id.* ¶¶ 95, 107-09; Defs.' Mot. at 7-8.)

In Defendants' view, *Potter v. Clark*, 497 F.2d 1206 (7th Cir. 1974), establishes that allegations regarding a lack of any policy are insufficient to state a municipal liability claim. The court does not agree with this interpretation of *Potter*. Plaintiff there did not allege *any* act or conduct on the part of the defendant, the only person named in the caption of the complaint, towards the plaintiff. 497 F.2d at 1207. Here, Plaintiff's complaint alleges that Sheahan and

---

[5](...continued)
government entity. *See McCormick*, 230 F.3d at 325-26. This language should not be read to require more than notice pleading, but only to require that the pleadings allege that the government entity is responsible for the constitutional deprivation resulting from the alleged policy or custom. *See id.*; *Monell*, 436 U.S. at 690. In fact, *McCormick* is explicit that "[t]he Supreme Court has made it very clear that federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability." 230 F.3d at 323 (citing *Leatherman*, 507 U.S. at 164).

Kurtovich were "responsible for formulating and supervising policies, customs, and regulations" of their respective offices, and that Defendants' established policies and customs caused Plaintiff's constitutional injury. (2d Am. Compl. ¶¶ 8, 16, 95, 100.) The fact that Plaintiff did not use the words "policy, custom, or practice" in the allegations following the captions for Count I and II (Defs.' Mot. at 7) makes no difference; whether a complaint provides fair notice of the grounds on which it rests "is determined by looking at the complaint as a whole." *See Scott v. City of Chicago*, 195 F.3d 950, 952 (7th Cir. 1999).

Nor is the court persuaded by Defendants' argument, relying on *Sivard v. Pulaski County*, 17 F.3d 185, 188 (7th Cir. 1994) that Hargarten's claim must be dismissed for failure to allege more than a single instance of wrongdoing. (Defs.' Mot. to Dismiss 6–7.) Although Plaintiff has not identified any other detainee who was a victim of Defendants' alleged policy, he does, as described above, allege numerous instances in which Defendants' agents or employees refused his own requests to investigate the bond amount under the DuPage County warrant. (*See, e.g.*, 2d Am. Compl. ¶¶ 55, 57.) In any event, *Sivard* involved a motion for summary judgment, not a motion to dismiss, and does not address notice pleading standards. *See* 17 F.3d at 187; *Frieri v. City of Chicago*, 127 F. Supp. 2d 992, 995 (N.D. Ill. 2001) (observing that *McCormick's* holding that "boilerplate allegations" are sufficient to plead municipal liability under § 1983 clarifies confusion created, in part, by *Sivard*). Plaintiff's complaint, when taken as a whole, sufficiently alleges the existence of an official policy or custom that deprived Plaintiff of his constitutional rights. *See Phelan*, 2006 WL 2690986, at *13 (citing *Roach*, 111 F. 3d at 548) (emphasis added).

Finally, the court rejects Defendants' argument that the alleged policy and custom "cannot reasonably be alleged to be the cause of Plaintiff's alleged constitutional harm." (Defs.' Reply at 2.) Defendants urge that Plaintiff cannot allege both that the Sheriff's deputies intentionally misrepresented the bond amount and that the policy of the Defendants requires officers to refuse to investigate or confirm the accuracy of bonds on warrants or ignore such requests to confirm

7

bond amounts. (*Id.*) Defendants are correct that *Monell* requires that the policy or custom be "the moving force of the constitutional violation" to establish official capacity liability under § 1983. *Monell,* 436 U.S. at 694. Nevertheless, drawing all reasonable inferences in Plaintiff's favor, as this court must on a motion to dismiss, the court concludes that Defendants' alleged policy and custom of ignoring and refusing to confirm and investigate inquiries as to the accuracy of a bond amount could have been the "moving force" behind the constitutional violation, even if Defendants' agents and employees also acted intentionally in misrepresenting the bond amount to Plaintiff. It is reasonable to infer that, but for the alleged official custom and policy authorizing Defendants' employees and agents to ignore a detainee's request for verification of the bond amount, an intentional misrepresentation would not have occurred. In other words, a "refusal to confirm" policy, or a policy of ignoring requests to confirm, could arguably encourage intentional misrepresentation and extend wrongful detention in a case such as Plaintiff's. Thus, when taken in the light most favorable to Plaintiff, intentional misrepresentation does not prevent the alleged policies and customs from being "the moving force of the constitutional violation." *See Monell*, 436 U.S. at 694.

### 2. Count IV

Count IV is captioned as a claim under 42 U.S.C. §§ 1983, 1985(2) "against municipalities and their departments." (2d. Am. Compl. at 19.) Defendants nevertheless addressed Count IV as though it had been brought against Sheahan and Kurtovich, (Defs.' Mot. at 1), and Plaintiff made no effort to correct this interpretation. As noted, a claim against Sheahan and Kurtovich in their official capacities is in fact a claim against the County. Count IV is thus redundant and the court dismisses it as against the County Defendants.

Count IV relates to the moving parties insofar as it contains custom and policy allegations that Defendants have suggested are lacking from Counts I and II. As discussed previously, consistent with the obligation to review "the complaint as a whole," *see Scott*, 195 F.3d at 952, the court has already considered the allegations in Count IV for the purpose of determining whether

8

Plaintiff has adequately alleged claims against Sheahan and Kurtovich in their official capacities. Beyond the custom and policy allegations that are clearly relevant to the official capacity liability claims in Counts I and II, however, Count IV states no additional claim against the moving parties and is therefore redundant of the claims stated against Sheahan and Kurtovich under §1983 in Counts I and II. The court therefore dismisses Count IV against the moving parties.

**B.    State Claim for Illegal Imprisonment**

In Count III, Plaintiff seeks damages against all Defendants under Illinois state law barring illegal imprisonment. The court previously dismissed this claim as time-barred in a March 30, 2006 order, stating: "[t]he Court's consideration of the Illinois Tort Immunity Act was in error; that Act imposes a one-year limitations period regardless whether the acts in question were of a discretionary or ministerial nature. Plaintiff's state law claims are dismissed as time-barred." (3/30/06 Order.) Plaintiff's Second Amended Complaint again includes this claim, and Plaintiff has alleged no new facts nor presented any arguments that require the court to reconsider its prior order.[6] Because both parties discuss this claim, the court will briefly address why the state law claim for illegal imprisonment against all Defendants, including those not joining in this motion, is time-barred here.

The Tort Immunity Act imposes a one-year time limit for the filing of civil actions against local entities and their employees from the date "the injury was received or the cause of action

---

[6] Plaintiff's response to the argument that his state law claim for illegal imprisonment is time-barred suggests that Plaintiff believes Defendants are challenging the timeliness of his § 1983 claim. (Pl. Opp'n at 13.) This confusion may have arisen because Defendants mistakenly commingled Counts III for illegal imprisonment with Count II, a § 1983 claim, at one point in their motion to dismiss. (Defs.' Mot. at 8.) Defendants made clear, however, in at least two other instances that they were moving to dismiss the *state* law claim as time-barred. (*See id.* at 1-2, 9.) In any case, even if Plaintiff's failure to respond to Defendants' substantive arguments regarding the applicability of the Tort Immunity Act can be attributed to Defendants' drafting error, Plaintiff's lack of a substantive response had no bearing on this court's decision to dismiss Count III against all Defendants. Plaintiff did respond to the arguments based on the Tort Immunity Act in his opposition to Defendants' earlier motion to dismiss.

9

accrued."[7] 745 ILCS 10/8-101(a). The limitations period set forth in 745 ILCS 10/8-101(a) draws no distinction between civil actions that arise out of the performance of discretionary versus ministerial duties and defines civil actions broadly, as "*any* action, whether based upon the common law or statutes or [Illinois] Constitution." 745 ILCS 10/8-101(c) (emphasis added); *see Williams v. Lampe*, 399 F.3d 867, 869-70 (7th Cir. 2005) (finding one-year limitation for filing applies to state-law claims joined with § 1983 claims). The one-year time limitation therefore applies to civil actions that fall under the Tort Immunity Act, including the state law claim brought against Defendants here, regardless of whether the claim arose out of the performance of discretionary or ministerial duties. *See Roark v. Macoupin Drainage Dist.*, 316 Ill. App. 3d 835, 841, 846, 738 N.E.2d 574, 580, 584 (4th Dist. 2000) (failing to reach a conclusion whether activity was ministerial or discretionary but applying one-year limitation under 745 ILCS 10/8-101(a)).

Plaintiff was released from the custody of the CCDOC on November 12, 2003 when he was transferred to the DuPage County Jail. (2d Am. Compl. ¶ 56.) Because a claim for false imprisonment does not accrue any later than a plaintiff's release from the custody of those alleged to be responsible for the false imprisonment, Plaintiff's claim accrued no later than November 12, 2003. *See Harrell v. Sheahan*, 937 F. Supp. 754, 757-58 (N.D. Ill. 1996). Plaintiff filed his original complaint on October 19, 2005, more than one year after his cause of action accrued. Plaintiff's claim for illegal imprisonment is therefore time-barred under the Tort Immunity Act and dismissed against all Defendants, including those who have not joined in this motion.

**C.     42 U.S.C. § 1985(2) Claims**

Counts I, II, and IV contain claims under 42 U.S.C. § 1985(2) in addition to the § 1983 claims discussed above. In their motion to dismiss, Defendants do not discuss whether Plaintiff has adequately pleaded claims under § 1985(2), nor do Defendants mention § 1985(2) at any point

---

[7] Some actions arising out of patient care have a two-year limitations period for filing. 745 ILCS 10/8-101(b). This exception does not apply here.

within their motion to dismiss. Plaintiff likewise makes no mention of his purported § 1985(2) claims in his opposition brief. Section 1985(2) prohibits, in relevant part, two or more persons from conspiring "for the purpose of impeding, hindering, obstructing, or defeating" justice, "with intent to deny to any citizen the equal protection of the laws, or to injure him or his property" for attempting to enforce a person's right to equal protection. 42 U.S.C. § 1985(2). Section 1985(2) further requires that the conspiracy be motivated by "racial or some other type of invidious, class-based discrimination." *Lowe v. Letsinger*, 772 F.3d 308, 311 (7th Cir. 1985) (affirming dismissal of § 1985(2) claim because complaint did not allege that defendants' actions were motivated by "racial or some other type of invidious, class-based discrimination") (citations omitted); *Friedman v. Vill. of Skokie*, 736 F.3d 236, 238 (7th Cir. 1985) (affirming dismissal of § 1985(2) claim, stating that plaintiff "has not alleged the type of racial or other class based discrimination that those sections are intended to prohibit") (citation omitted).

A court may dismiss a claim *sua sponte* "provided that a sufficient basis for the court's action is evident from the plaintiff's pleading." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). Nowhere in his complaint (now the third one on file) has Plaintiff made any allegations regarding a discriminatory animus for the alleged conspiracy "to obstruct the process of justice." (2d Am. Compl. ¶ 106.) In fact, at no point does Plaintiff's complaint make any reference to his race or any other protected class. Although mindful that notice pleading is sufficient, the court concludes Plaintiff has not alleged a claim under § 1985(2) and therefore dismisses such claims against all Defendants, including those not joined in this motion, without prejudice.

## **CONCLUSION**

For the reasons stated above, this motion to dismiss by Defendants Sheahan, Kurtovich,

and Cook County (23) is granted in part and denied in part. Defendants are directed to file their answer to Counts I and II within 21 days. A Rule 16 conference is set for December 6, 2006, at 9:30 a.m.

ENTER:

Dated: October 27, 2006

_____
REBECCA R. PALLMEYER
United States District Judge